Huelsenkamp v. Citizens' Railway Co.

————•◆◆•————

BERTHA HUELSENKAMP, Respondent, v. THE CITIZENS' RAILWAY COMPANY, Appellant.

*Carriers—Negligence—Damages.*—Carriers of passengers are not insurers, but they are bound to the utmost care and skill in the performance of their duty. If the carrier be guilty of negligence which mediately or immediately produced the injury, and the party injured was not guilty of any negligence, carelessness, or imprudence, which directly contributed to the injury, the carrier will be liable.

37 537
32a 239

37 537
38a 71

37 537
106 543
46a 566

37 537
118 226

37 537
150 401

37 537
90a 495

37 537
102a 584
102a 587

37 537
178 117

*Appeal from St. Louis Court of Common Pleas.*

This is an action brought, under the statute, by the plaintiff, to recover the sum of five thousand dollars, on account of the death of her husband, caused, as is alleged by the plaintiff, by the carelessness of defendant's agents in conducting certain street railroad cars belonging to the defendant. Defendant denies carelessness or negligence on the part of its agents, and avers that Charles Huelsenkamp, the deceased, came to his death by reason of his own carelessness and negligence.

It appears from the evidence, that the accident occurred in the night time, on the Franklin avenue railroad track, and at a switch or turn-out on the road; that the deceased was on the car which was coming into the city from the Fair grounds; that the car was very much crowded; that the deceased was standing on the steps of the platform of the car; and that whilst this car was passing another car of defendant, which was standing on the switch, the body of deceased was brought in contact with the said stationary car, and that he was thus crushed and killed. It was in evidence, that deceased, whilst standing on the steps of the moving car, was holding on to the iron railing of the window of the car, and that his body was swinging out some distance from the body of the car at the time, or just before, the accident occurred; that he was told by one of the witnesses that he was in a dangerous position—that he had better get farther in, or get off the car; and witness also testified that he could have avoided the danger if he had chosen to do so.

There was a conflict of testimony as to where the stationary car was standing on the switch, whether in the centre, or more to one end. There was conflict, also, as to whether the cars, in passing, would have touched each other; but the preponderance of testimony was, that they would have passed without touching. The distance between the tracks, at the centre of the switch, was three feet, two inches. There was no evidence to show that the driver knew that the deceased was on the car.

Upon the trial, the following instruction was asked by the plaintiff, and given by the court:

"The simple fact, that Huelsenkamp was on board the defendant's car, will not authorize the jury to infer or conclude that he was a passenger for hire. But if they are satisfied from the evidence, that persons, without the previous consent of the agents or servants of the defendant, were in the habit of getting on its cars and riding thereon, both outside and inside, upon the platform and steps, and that, too, without reference to the number of persons so getting on and riding, and that the defendant habitually collected the fare for the carriage of such persons; and further, that Huelsenkamp got upon the defendant's car for the purpose of being carried as a passenger, then, in the absence of any prohibition against his becoming a passenger, the jury is justified in inferring there was a contract between the defendant and him, that the defendant would carry him as a passenger for the ordinary fare; and it is the right and the duty of the jury to determine, from all the evidence in the case, whether there was any such contract between the defendant and Huelsenkamp; in other words, to determine whether he was a passenger for hire on defendant's car, or not."

Also, the following:

1. If you find that deceased was, at the time of his death, the husband of plaintiff; and that defendant was a corporation and a common carrier; and that deceased was a passenger for hire in a car of defendant; and that deceased was carried as a passenger upon the steps of a car of defendant, by its agents, because there was no room elsewhere for him, in or about the car; and if, while the car upon which deceased was being carried, was passing another car of defendant, upon a turn-out in the road, the two cars came in collision with each other, or approached each other so near as to kill deceased by jamming him or crushing him between the said cars; and such catastrophe was caused by the least negligence, want of skill, or prudence, on the part of defendant's agents, in managing said cars, or either of them; and

that deceased then and there exercised ordinary care and prudence as a passenger, then the jury should find for plaintiff, and assess damages at five thousand dollars. And, under the circumstances above stated, although the jury may believe that if deceased had used extraordinary care, and had been on the alert, and had been looking out ahead for danger, he might have avoided injury, yet his failure so to do furnishes no excuse for defendant, and its liability is not affected thereby.

2. If the jury find the agents of defendant were guilty of negligence in the management of the cars of defendant, by reason of which two of defendant's cars came in collision with each other, or came so near each other on the road, at a place provided for the cars on the road to pass each other, by reason of which deceased was injured and killed; and that deceased was then a passenger on defendant's road; and that deceased was not guilty of any want of ordinary care and prudence, which directly contributed to the injury, then the defendant is liable in this suit.

3. Although the deceased may have been guilty of misconduct, or failed to exercise ordinary care and prudence, while a passenger on defendant's car, which may have contributed remotely to the injury or death of deceased, yet if the agents of defendant were guilty of misconduct in the management of said cars, which was the immediate cause of deceased's injury and death; and with the exercise of prudence by said agents, said injury and death might have been prevented, the defendant is liable in this suit; and if the jury find for the plaintiff, they will assess the damages at the sum of five thousand dollars, and return a verdict for the plaintiff for that sum.

All of which said instructions, so asked by the plaintiff, and numbered 1, 2 and 3, were given by the court.

The following instructions were given for the defendant:

1. If Charles Huelsenkamp voluntarily took and placed himself in a dangerous or improper place or position on the

car, when he might have taken a more safe place or position, and his death was caused by reason of his having placed himself in such a dangerous position, then plaintiff cannot recover.

2. If it appear that Huelsenkamp was not a passenger at the time of the injury, the defendant is only bound to the use of ordinary care, and is responsible only for gross negligence. Ordinary care is that degree of care which a prudent man would exercise about his own affairs.

3. If it appear that Huelsenkamp was not a passenger, and that he did not, in any manner, by his own negligence, contribute to the injury, still the plaintiff cannot recover, unless it appear that the injury and death were caused by the gross negligence of defendant, or its agents.

Instruction No. 1, as above, was interlined by the court, as follows, "when he might have taken a more safe place or position," and in that form it was given; to which defendant excepted.

The defendant asked the following instructions:

1. The mere fact that Huelsenkamp was being transported upon the car of defendant does not constitute him a passenger, unless it appear that he was being transported, with the knowledge and consent of defendant, or one of its agents, for a consideration, paid or to be paid, under some express or implied agreement between the parties.

4. Whether Huelsenkamp was or was not a passenger, if he by his own negligence in any way contributed to the injury, the plaintiff cannot recover.

5. Whether the deceased, Huelsenkamp, was or was not a passenger, he himself was bound to the use of ordinary care; and if the injury was the result of the common fault of both parties, the plaintiff cannot recover.

6. If it appear from the evidence, that the car standing on the switch was in such a position as that the moving car could pass it without colliding; that the horses in the moving car were going at a moderate gait; that Huelsenkamp

had placed himself, at the time of the injury, in a dangerous or improper position on the car, and that in consequence of his occupying that position the injury occurred from which the death ensued, then the jury must find for the defendant.

7. If it appear that Huelsenkamp wilfully, and without the consent of defendant's agents, placed himself on the car in a dangerous position, from the result of which the injury and death occurred, then defendant is not liable, unless it appear to the satisfaction of the jury that defendant's agent saw that Huelsenkamp was in such a dangerous position, and wilfully and designedly contributed to the injury.

8. In this action the plaintiff cannot recover, unless it appear from the evidence, that, in case death had not ensued, Huelsenkamp himself would have had a right of action against the defendant for the damages occasioned by the injury.

9. If Charles Huelsenkamp voluntarily placed himself in a dangerous or improper place or position on the car, and the cars of defendant were so managed or conducted, that he could not have been injured in a proper place thereon, and that his death was caused by reason of his having taken such dangerous and improper position, plaintiff cannot recover.

All of which instructions, so asked by the defendant, as above, were refused by the court.

A verdict was found for the plaintiff; a motion for a new trial made by the defendant, and overruled by the court; an appeal asked and granted.

*Sharp & Broadhead*, for appellant.

This case has once before been before the Supreme Court of Missouri—34 Mo. 45; but the main point presented was not decided. In the opinion delivered in that case by the court, it was held, that the court below had erred in undertaking to determine, by instruction, what was misconduct or negligence. It was very properly held, that this was a question peculiarly within the province of the jury; but this was the only question decided by the court.

In the case as presented before this court, the appellant claims that the court below erred in giving the third instruction asked by the plaintiff, and in refusing all the instructions asked by the defendant upon the points involved in that instruction, particularly the fifth and sixth.

The question presented is, whether, if the deceased was in fault, and, by his own fault or want of care, contributed to the injury complained of, the plaintiff can recover. The court below says, it makes no difference, unless the act of the party directly contributed to the injury. And as to what constituted a direct or immediate cause of the injury, so far as the acts of the deceased were concerned, the court refused to give the instructions asked by the defendant.

The rule established by the court below, in these instructions, ignores the necessity of all care and prudence on the part of the plaintiff, unless it contributes directly to the injury, so that it matters not how much the person may be in fault, nor how slight the negligence may be on the part of the defendant, the defendant is nevertheless liable if an injury occurs.

In the case of Spooner v. Brooklyn City R.R. Co., 31 Barb. 419, it was held, that " no action will lie against another, to recover damages for a personal injury, where it appears that the carelessness and imprudence of the plaintiff contributed to the injury"—Chamberlain v. Milwauk. & Miss. R.R. Co., 7 Wis. 431 ; Butterfield v. Forrester, 11 East. 61 ; Willetts v. Buff. & Roch. R.R. Co., 14 Barb. 585 ; Penn. R.R. Co. v. Aspell, 23 Pa. 149 ; Rathbun v. Payne, 19 Wend. 401 ; Macon & West. R.R. Co. v. Davis' adm'r, 13 Ga. 87 ; Harlow v. Huniston, 6 Cow. 191. Negligence by the defendant, and ordinary care by the plaintiff, are necessary to sustain the action—Brown v. Maxwell, 6 Hill, 592 ; Brand v. Troy & Schen. R.R. Co., 8 Barb. 368. Where negligence on both sides, neither can recover, unless one be guilty of wanton injury or gross neglect—Hennig v. Wilm. & Balt. R.R. Co., 10 Ired. 404 ; 12 Pick. 177 ; Pierce, Am. R.R. Law, 272–8.

If the evidence of the plaintiff shows that he contributed to the injury, he may be non-suited, without submitting the case to the jury—Pierce, Am. R.R. L. 274; Haring v. N. Y. & Erie R.R. Co., 13 Barb. 9; Sheffield v. Roch. & Syr. R.R. Co., 21 Barb. 339.

The company is not responsible for an injury to a passenger which would not have happened but for his negligence, or to which his negligence substantially contributed—Galena & Chicago Un. R.R. Co. v. Yarwood, 15 Ills. 468; Gal. & Chic. R.R. Co. v. Fay, 16 Ills. 558.

In none of these cases do we find any distinction drawn between injuries resulting from the direct and immediate negligence, or those resulting from remote or consequential causes of injury. The simple question is, whether the act or negligence of the plaintiff contributed in any way to the injury; if so, he is not entitled to recover. Indeed it would be impossible, in most cases, to draw that distinction so as to make it intelligible.

*Cline & Jamison*, for respondent.

A carrier of passengers is bound to use all care, caution, and prudence, that human foresight can bring to his aid, and is liable for the least negligence, and must use the highest degree of diligence—Phil. & Reading R.R. v. Derby, 14 How., U. S. 486; Stokes v. Saltonstall, 13 Pet. 192—see the instructions given in this case; Sto. Bail. ¶ 11; St. bt. New World v. King, 16 How., U. S. 474; Hall v. Conn. St. bt. Co., 13 Conn. 327; Fuller et ux. v. Naugatuck R.R. Co., 21 Conn. 565, 576; Camden R.R. Co. v. Burke, 13 Wend. 611, 626; McKinney v. Neil, 1 McLean, 552; Maury v. Talmage, 2 McLean, 161; Stockton v. Frey, 14 Gill. 406; Derwent v. Loomer, 21 Conn, 245, 253; Boyce v. Anderson, 2 Pet., U. S., 150; Ang. Carr. §§ 523, 568, 570; Redf. Railw. § 149, p. 323; Ingalls v. Bills, 9 Metc. 1; Harris v. Caster et al., 1 C. & P. 636; Chester v. Greggs, 2 Campb. 79; Sharp v. Grey, 9 Bingh. 457.

The deceased was not bound to be on the alert, or to use extraordinary care, and to look out ahead, to avoid danger. All that is required of a passenger is, that he should not have been guilty of any want of ordinary care and prudence which directly contributed to the injury; to exculpate the carrier, the passenger must have been guilty of negligence which, in whole or in part, was the proximate cause of the injury—Redf. Railw. § 150, p. 330, and cases cited; Pearce, Railw. p. 276; Carrol v. N. Y. & N. Hav. R.R. Co., 1 Duer, 580; Zemp v. W. & M. R.R. Co., 9 Richardson, 84; Penn. R.R. Co. v. McCluskey, 23 Pa. 526; Trow v. Vermont R.R. Co., 24 Vt. 487; Robinson v. Cone, 22 Vt. 213; Berge v. Gardiner, 19 Conn. 507; Lynch v. Nurdin, 1 Ad. & El., n. s. 422; Collins v. Sch. Railw., 12 Barb. 492.

Although the deceased may have been guilty of misconduct, or failed to exercise ordinary care and prudence, while a passenger on defendant's cars, which may have contributed remotely to the injury or death of deceased, yet, if the agents of defendant were guilty of misconduct in the management of said cars, which was the immediate cause of deceased's injury and death, and with the exercise of prudence by said agents said injury and death might have been prevented, the defendant is liable in this suit—Redf. Railw. § 150; Trow v. Vermont Cent. R.R., 24 Vt. 487; Zemp v. W. & Mar. R.R. Co., 9 Richd. 84; Penn. R.R. Co. v. McCluskey, 23 Pa. 526; Pearce, R.R. Law, p. 276; Bigby v. Hewit, 5 Exch. 243; see opin. of Polluck, C. B., Kerwhacker v. C. C. & C. R.R. Co., 3 Ohio, 172; C. C. & C. R.R. v. Elliott, 4 Ohio, 474.

The above authorities establish the proposition, that although the deceased may have been guilty of remote or indirect negligence, yet, if the agents of defendant were guilty of direct or proximate negligence, the plaintiff can recover; and this is the proposition asserted in the above instruction.

WAGNER, Judge, delivered the opinion of the court.

In the discussion of this case at the bar, the counsel took

an exceedingly wide range, examining at length the doctrine applicable to the law of carriers, and also of contributory negligence. It may be conceded that the law in reference to the liabilities and responsibilities of carriers of passengers is now well understood and defined. They are not, as in the case of carriers of goods, insurers and responsible for all damages which do not fall within the excepted cases of the acts of God and the public enemy, but they are bound to the utmost care and skill in the performance of their duty. The degree of responsibility, therefore, to which carriers of passengers are subjected, is not ordinary care, which will make them liable only for ordinary neglect, but extraordinary care, which renders them liable for slight neglect. Public policy and safety require that they should be held to the greatest possible care and diligence, and that the personal safety of the passengers should not be left to the sport of chance or the negligence of careless agents—Ang. Corp. § 568; Ingalls v. Bills, 9 Met. 1; Stokes v. Saltonstall, 13 Pet. 181; Phil. & Reading R.R. Co., v. Derby, 14 How. 486; Stm. bt. New World et al., v. King, 16 How. 469. But the principal ground relied on by the appellant in resisting a recovery, is that the deceased was guilty of negligence, and contributed to the accident which resulted in his death; and that where both parties are in fault the plaintiff cannot recover. Perhaps no question has been more discussed and litigated in the courts, of late years, than this very question of what will amount to such fault or negligence as will preclude a party from maintaining an action for an injury. Where a person was injured by an obstruction placed in the highway, against which he fell, and brought his action to recover damages against the person who caused the obstruction, Lord Ellenborough said, "One person being in fault will not dispense with another's using ordinary care for himself. Two things must concur to support this action; an obstruction in the road by the fault of the defendant, and no want of ordinary care to avoid it on the part of the plaintiff" —Butterfield v. Forrester, 11 East. 60. In Galena & Chi-

cago Union R.R. Co. v. Yarwood, 15 Ills. 468, a passenger was taken on the train to be transported for a short distance, and was told that the passenger cars were full, and that he must ride in the baggage car; and having entered the baggage car, he then commenced playing and scuffling with two fellow-passengers, and in the course thereof ran from the baggage car into the passenger car, and the train being thrown from the track, rushed out at the forward end of the latter car and jumped from the platform, by which his leg was broken. It was held, that it was culpable negligence in him to put himself in that position, contrary to the terms on which he was received as a passenger, which made the leap necessary to escape the peril, and that consequently he was not entitled to recover. And if a man chooses to ride on a railroad with his head and arms out of the car window, and in passing a dangerous place in the road, disregards an audible warning, by the conductor, of the danger of putting his head or limbs outside the car, and will not ride like a prudent man, he will have to bear the consequences of his foolishness. So where a lunatic was travelling in the cars upon a railroad, in company with his father, who had paid the fare for both and taken tickets; the father got out at a stopping-place to procure refreshments, leaving his son in the cars, without giving notice to any one of his situation, and while absent the train started. On regaining the cars the father did not find his son where he had left him, the latter having changed his seat. The conductor, in the absence of the father, applied to the lunatic for his ticket, not knowing him to be insane or that his fare had been paid. The lunatic refusing to deliver his ticket, the conductor caused the train to be stopped and the lunatic to be put off the cars, in consequence of which the lunatic was run over by another train of cars and killed. The evidence not showing any negligence or want of care on the part of the conductor, but showing great negligence and imprudence in the conduct of the lunatic and his father, it was held that an action could not be maintained by the personal representatives of the lunatic against

the railroad company, under the New York statute, authorizing the recovery of damages in case of death by the wrongful act, neglect or default of another—Willets v. Buffalo & Rochester R.R. Co., 14 Barb. 585. The case of Chamberlain v. Milwaukee & Miss. R.R. Co., 7 Wis. 425, is not an authority to the extent contended for by the counsel for the appellant. There the court which tried the case instructed the jury, that the fact that the plaintiff was on the train and was injured by being thrown off and run over, would of itself constitute a *prima facie* case in which the plaintiff would have the right to recover. The court held that this instruction was erroneous, and said the accident might have happened by his own want of ordinary care and prudence, while upon the top of the cars at the brake, and under such circumstances as would exonerate the company from all blame in the premises. But that, if he could show he was exercising ordinary care and diligence, and he was injured by the carelessness and negligence of the servants of the company, he would be entitled to damages, and that he must also show that his own negligence did not contribute to the injury.

Where there is a choice of positions upon a railroad, either of which a passenger may lawfully take, he is not obliged to select that which is the least dangerous. Thus in Carrol v. N. Y. & N. Hav. R.R. Co., 1 Duer, 571, the plaintiff was injured by a collision of two trains running in *opposite* directions. The plaintiff was at the time of the collision in the post-office department in the baggage car, being lawfully there and with the acquiescence of the conductor. It was a much more dangerous location, on the happening of such a collision as took place, than a seat in the passenger cars, and he knew the fact, and had he been in the passenger car he would not have been injured. It was held, that negligence is the violation of the obligation which enjoins care and caution in what we do, and that the plaintiff not being under any obligation to be more prudent and careful than he was, in contemplation of there possibly being such culpable conduct on the part of the defendant as would endanger his life, if he

remained where he was, and his personal safety on any part of the train, and not being a trespasser, was not to be precluded from his action because he might have selected a position of comparative safety. And though a passenger may have been upon the cars in violation of the rules of the railroad company, yet if it appears to the jury that these rules have been waived or revoked in his favor, he will nevertheless be entitled to his action for his injuries suffered from any want of care on the part of the company—Grt. N.W. R.R. Co. v. Harrison, 26 Eng. Law & Eq. 443; Collett v. London & N.W. R.R. Co., 6 Eng. Law & Eq. 305. We take the correct rule to be, that to the liability of a railway company as a passenger carrier, two things are requisite: That the company shall be guilty of some negligence which mediately or immediately produced or enhanced the injury, and that passengers should not have been guilty of any carelessness and imprudence which directly contributed to the injury, since no one can recover for an injury of which his own negligence was in whole or in part the proximate cause; and although the plaintiff's misconduct may have contributed remotely to the injury, if the defendant's misconduct was the immediate cause of it, and with the exercise of prudence he might have prevented it, he is not excused—Redf. Railw., § 150, pp. 330-1, 2 ed.; Robinson v. Cone, 22 Vt. 213; Illidge v. Goodwin, 5 C. & P. 190; Zemp v. W. & M. R.R. Co., 9 Rich. Law, 84.

The general rule of law in regard to what negligence will prevent a plaintiff from recovering was much discussed in a recent case in the English Exchequer, and the principle arrived at was substantially the same as that laid down above. It seems from the report that the plaintiff had fettered an ass so that it could not escape, and left it in the highway, and that the defendant negligently drove his horses and wagon against the ass and killed it. Lord Abinger, Ch. B., in delivering the opinion of the court, said "the defendant had not denied that the ass was lawfully in the highway, and therefore we must assume it to be lawfully there; but even were

it otherwise, it would have made no difference, for as the defendant might, by proper care, have avoided injuring the animal, and did not, he is liable for the consequences of his negligence, though the animal may have been improperly there." And, Parke, B., added, " the judge simply told the jury that the mere fact of negligence on the part of the plaintiff in leaving his donkey on the public highway, was no answer to the action, unless the donkey's being there was the immediate cause of the injury; and that if they were of the opinion that it was caused by the fault of the defendant's servant in driving too fast, or, which is the same thing, at a smartish pace, the mere fact of putting the ass on the road would not bar the plaintiff of his action. All that is perfectly correct, for although the ass may have been wrongfully there, still the defendant was bound to go along the road at such a pace as would be likely to prevent mischief. Were this not so, a man might justify the driving over goods left on a public highway, or even over a man lying asleep there, or the purposely running against a carriage going on the wrong side of the road"—Davies v. Mann, 10 Mees. & W. 545. The same doctrine is declared and enforced in the Queen's Bench—Lynch v. Nurdin, 1 Ad. & El. 29, n. s. In the very able and carefully considered case of Beers v. Housatonic R.R. Co., 19 Conn. 566, the question is critically examined and many of the authorities referred to, and the court say, that there having been negligence on the part of the defendants, it was not sufficient for them, in order to excuse themselves, to show merely that there was a want of care on the part of the plaintiff, unless it was a want of such a degree of care as it was incumbent on the plaintiff to exercise. In other words, if the plaintiff exercised all the care that the law required of him, the defendants cannot deliver themselves from the effects of negligence on their part. Otherwise the plaintiff would be left without redress for an injury wrongfully inflicted on him by the defendants, when the former had been guilty of no want of duty.

The rational rule, and the one, as we think, established by

the best authorities, in reference to the care incumbent on the plaintiff, is, that it must be ordinary care, as it is termed, which, as stated by Lord Denman, in interpreting that phrase as used by Lord Ellenborough, means " that degree of care which may reasonably be expected from a person in the plaintiff's situation," and is synonymous with reasonable care. It would seem that the principle, that one who had himself used reasonable care, but had, notwithstanding, suffered an injury from the negligence of another, should have redress for that injury, is so obviously just that it carries with it its own vindication. But it does not rest on its own inherent reasonableness. The authorities in support of it are numerous and explicit, and although it has been supposed that the cases go so far as to decide, that the want of any degree of care whatever, however great, on the part of the plaintiff, concurring with the negligence of the defendant, will preclude a recovery by the former, we are satisfied, after a careful examination of all the cases, that no well considered case, perfectly understood, sustains that position without scrutinizing in detail the cases which are deemed to favor this doctrine. It will be apparent, on an examination of them, that this erroneous impression has arisen from a want of precision in some of them, in the manner of laying down the rule which was deemed applicable to them by the judges, and from an incorrect apprehension of their language in others. It will be found, in looking at the circumstances of these cases, that the fault or negligence of the plaintiff, to which the judges alluded, as being that which would preclude a recovery, if it concurred with the negligence of the defendant, consisted not of the least degree of negligence, but of such a degree as would amount to the want of ordinary or reasonable care, and that although it was not characterized by those terms, it was obviously the degree of negligence or fault which was intended. And in several of them the right of the plaintiff to recover is expressly placed on the question, whether he exercised a reasonable care to avoid the consequences of the defendant's negligence. In further

support of the rule heretofore laid down, we refer to the case of Trow v. The Vermont Central R.R. Co., 24 Vt. 487, where the question is examined and the principle sustained. The court remarks, "this leads our investigation to the question, whether an action can be sustained when the negligence of the plaintiff and the defendant have mutually co-operated in producing the injury for which the action is brought. On this question the following rules will be found established by the authorities. Where there has been mutual negligence, and the negligence of each party was the proximate cause of the injury, no action whatever can be sustained. In the use of the words 'proximate cause' is meant negligence occurring at the time the injury happened. In such case no action can be sustained by either, for the reason 'that, as there can be no apportionment of damages, there can be no recovery.' So where the negligence of the plaintiff is proximate, and that of the defendant remote or consisting in some other matter than what occurred at the time of the injury, in such case no action can be sustained, for the reason that the immediate cause was the act of the plaintiff himself. Under this rule falls that class of cases where the injury arose from the want of ordinary or proper care on the part of the plaintiff at the time of its commission. These principles are sustained by Hill v. Warren, 2 Stark. 377 ; 7 Met. 274 ; 12 Met. 415 ; 5 Hill, 282 ; 6 Hill, 592 ; Williams v. Holland, 6 C. & P. 23. On the other hand, when the negligence of the defendant is proximate, and that of the plaintiff remote, the action can then well be sustained, although the plaintiff is not entirely without fault. This seems to be now settled in England and in this country. Therefore, if there be negligence  on the part of the plaintiff, yet if, at the time the injury was committed, it might have been avoided by the defendant in the exercise of reasonable care and prudence, an action will lie for the injury." And the same rule is established and maintained in Georgia. In an action for killing a slave, the defence was that the slave's negligence contributed to the inury, but the Supreme Court, per Lumpkin, J., say, " it is

insisted that, if the injury in this case resulted in whole or in part from the misconduct of the plaintiff's servant, that he cannot recover; and this seems to have been the rule laid down in Butterfield v. Forrester, 11 East. 60, and Luxford v. Large, 5 Car. & Pay. 421. But this doctrine has been modified in later cases, and in Lynch v. Nurdin, 1 Ad. & El. n. s. 29, it was held that the defendant was liable in an action on the case, though the plaintiff was a trespasser and contributed to the mischief by his own act. And this case has been followed in Robinson v. Cone, 22 Vt. 213, and Birge v. Goodwin, 19 Conn. 507, and numerous other adjudications in this country. We approve of this modification of the principle, and think that it ought to be left to the jury to say whether, notwithstanding the imprudence of the plaintiff's servant, the defendant could not, in the exercise of reasonable diligence, have prevented a collision"—Macon & W. R.R. Co. v. Davis' adm'r, &c., 18 Ga. 679.

Now, in the case under consideration, the evidence shows that the railway company were in the habit of carrying passengers on the platforms of its cars, and collecting fare for the same. The position in which the deceased placed himself was perhaps unsafe, but it was not prohibited; and the evidence further shows, that owing to the crowded state of the cars, there was no other place he could take. Had there been any objection to carrying him in that manner, it would have been competent for the company or its employees to have put him off the car; but not having done so, they were bound to carry him with skill, prudence and care. There is nothing to show that he failed to exercise ordinary prudence and care. He might, in all probability, have avoided the catastrophe by being on the alert and exercising extraordinary vigilance, but such was not required of him. He stood within a few feet of the driver, and the driver knew, or at least it was his duty to know, the close proximity of the cars when they were about to collide, and also the position of the passengers on the platform. His driving steadily ahead, under such circumstances, stamps the act with recklessness and

gross negligence. The question of negligence was for the jury, and was properly submitted to them under instructions which fairly and correctly presented the true issue in the case and the law arising thereon. The instructions given by the court for the respondent and the appellant, when taken together, are unobjectionable, and properly apply the law to the case. It was not error in refusing the additional instructions asked for by the appellant, as the whole matter had been already fairly presented.

Judgment affirmed. Judge Holmes concurs ; Judge Lovelace absent.