Willmott v. The Corrigan Consolidated Street Ry. Co.

question and the one immediately following it, and is in harmony with the whole theory of our statute law in regard to the final settlements of the estates of decedents in the probate court, and we find nothing in the cases cited by counsel for the plaintiff in error to impugn the correctness of this conclusion. It follows that the circuit court committed no error in sustaining the demurrer to the petition, and the judgment is affirmed. All concur.

WILLMOTT, *by next Friend,* v. THE CORRIGAN CONSOLIDATED STREET RAILWAY COMPANY, *Appellant.*

IN BANC.

1. **Practice in Supreme Court**: WEIGHT OF EVIDENCE. It is not the province of the supreme court to pass upon the credibility of a witness, nor upon the weight of the evidence in reviewing the action of the trial court on a demurrer to the evidence.

2. **Railroad**: PASSENGER : DEGREE OF CARE. It is the duty of a railroad company to exercise the highest practical care to safely carry a passenger through his trip.

3. **Street Railway**: PASSENGER. It is the duty of a passenger boarding a street car to occupy a safe position therein, where there is room for him inside of the car.

4. ———— : ————— : RIDING ON PLATFORM. Where such passenger voluntarily occupies a position on the step of the platform and remains there during the transit, he assumes all the risks of danger ordinarily incident to his position, but he does not assume a risk of danger created by the negligence of the carrier, *e. g.,* running the car at a dangerous and unusual rate of speed.

5. ————— : ————— : ————— : PROXIMATE CAUSE. Such speed, if it causes the passenger to lose his hold and to fall from the car, will be deemed the proximate cause of the injury.

6. ————— : ————— : ————— : ————— : INFANT. The foregoing rules *held* applicable under the evidence in this case to a passenger of twelve years of age.

7. **Practice :** ADDITIONAL INSTRUCTIONS. While the trial court may give additional instructions after the jury has retired, yet in such case care should be taken to clearly define the scope and object of such additional instructions.

8. ———— : INSTRUCTIONS. Instructions should fairly submit the issues presented by the pleadings and the evidence.

*Appeal from Jackson Circuit Court.*—HON. J. H. SLOVER, Judge.

REVERSED AND REMANDED.

*Pratt, Ferry & Hagerman* for appellant.

(1) The court erred in giving instruction, numbered 2, of its own motion, which was given on the fourth day after the case was submitted. *First.* Whether there was any negligence in either of the respects alleged was for the jury. 20 C. L. J. 104; Thompson on Passengers, 444; *Fleck v. Railroad,* 134 Mass. 481; *Ashbrook v. Railroad,* 18 Mo. App. 290; *Donney v. Hendrie,* 46 Mich. 498; *Geistle v. Railroad,* 23 Mo. App. 361; *Smotherman v. Railroad,* 29 Mo. App. 265; *Burns v. Railroad,* 50 Mo. 139; *Huelsenkamp v. Railroad,* 34 Mo. 45, 51; *Lehr v. Railroad,* 118 N. Y. 556. The testimony warranted the submission of these questions. Plaintiff, by asking instructions 2, 3, 5, 6 and 12, tried the case on such theory, and that without more would bind him. *State v. Hope,* 100 Mo. 347. *Second.* There being then a substantial issue, the court on the original submission instructed the jury fairly, and it was not until the fourth day after the submission that instruction 2 was given. *Third.* Instruction 2, as thus given, was erroneous in two respects : *First.* It did not submit the question of contributory negligence, but merely submitted the question whether plaintiff's negligence was the cause of the injury. *Second.* It submitted only the negligence

in jumping from the moving train, ignoring the negligence of taking and keeping an improper position on the car. The court must not refer the jury to pleadings, but must state for the jury the issues in the case. *Proctor v. Loomis*, 25 Mo. App. 488; *Porter v. Knight*, 63 Iowa, 365; *Bryan v. Railroad*, 63 Iowa, 464; *Fitzgerald v. McCarty*, 55 Iowa, 702; Thompson on Charging the Jury, 13, sec. 8. It follows that, if the court enlarges the issues, reversible error is committed. *Waldhier v. Railroad*, 71 Mo. 514; *Reed v. Bott*, 100 Mo. 62. And there is the same result if the court, instead of enlarging, restricts the issues, as was done in this case. *Bank v. Murdock*, 62 Mo. 70; *Mansur v. Botts*, 80 Mo. 651; *Hines v. McKinney*, 2 Mo. 70; *Irgerson v. Pomeroy*, 13 Mo. 620; *Butcher v. Death*, 15 Mo. 271; *Barada v. Blumenthal*, 20 Mo. 162; *Mead v. Brotherton*, 30 Mo. 201. *Fourth.* It must be said that instruction 2, standing alone, is erroneous. The question then is, was appellant prejudiced thereby? The rule which appellate courts invoke is this: Where error has intervened in the trial of a case, a presumption of prejudice arises, and, unless the respondent can show from the record beyond any doubt that no prejudice resulted, there must be a reversal. *Hawes v. Stock Yards*, 103 Mo. 60; *Clark v. Fairley*, 30 Mo. App. 335; *Suttie v. Aloe*, 39 Mo. App. 38–43; *Walton v. Railroad*, 40 Mo. App. 544, 550; *Bindbeutal v. Railroad*, K. C. Ct. App. Mss.; *Smiths v. Shoemaker*, 17 Wall. 630, 639; *Railroad v. O'Brien*, 119 U. S. 99, 103; *Gilman v. Higley*, 110 U. S. 47, 50. *Fifth.* Instruction 2 as given conflicted with every other instruction before given. Conflicting instructions are always condemned, because it cannot be told which the jury followed. *Frederick v. Allgaier*, 88 Mo. 598, 603; *State v. McNally*, 87 Mo. 644, 658; *State v. Simms*, 68 Mo. 305, 309, 310; *Simmons v. Currier*, 60 Mo. 581, 585; *Henschen v. O'Bannon*, 56 Mo. 289, 292; *Thomas v. Babb*, 45 Mo. 384, 388; *Goetz v. Railroad*, 50 Mo. 472, 474; *Spohn v. Railroad*,

101 Mo. 417. *Sixth.* Instruction 2 was given after argument, without any request from the jury, and without any pretense of correcting any oversight or omission on the part of the judge. It is only when the record affirmatively discloses some such reason that an instruction can be given after argument. R. S. 1879, sec. 3655; R. S. 1889, sec. 2188; *Burns v. Wilson,* 1 Mo. App. 179, 181, 182; *Cordes v. Straszer,* 8 Mo. App. 61, 64, 65; *Clusky v. St. Louis,* 50 Mo. 89; *Dowzelot v. Rawlings,* 58 Mo. 75, 78. (2) There was error in giving instruction 2 for plaintiff, for the reason that it was for the jury to say whether it was negligence in itself to stand on the front step of the moving car. *Myer v. Railroad,* 40 Mo. 151; *Staples v. Canton,* 69 Mo. 592; *Colvin v. Sutherland,* 32 Mo. App. 77; *Huhn v. Railroad,* 92 Mo. 450; *Barry v. Railroad,* 98 Mo. 71; *Wagner v. Railroad,* 97 Mo. 523; see also cases cited in brief, div. 1, subd. 1, *supra.* (3) There was error in giving plaintiff's instruction, numbered 5. *First.* The instruction requires the highest degree of care. *Dougherty v. Railroad,* 97 Mo. 647, 648; *Pershing v. Railroad,* 71 Iowa, 561, and cases cited. *Second.* The instruction assumes that plaintiff was in a position where he would probably be injured. (4) Plaintiff's instruction, numbered 12, is erroneous. *First.* It seeks to apply the rule in this state, if after appearance of danger the injury could have been avoided (*Williams v. Railroad,* 96 Mo. 275), to a case not within the reason of the rule. *Tuley v. Railroad,* 41 Mo. App. 432; *Kellny v. Railroad,* 101 Mo. 67. *Second.* It makes a liability regardless of contributory negligence, if the position of the boy could have been discovered by any kind of care. (5) Plaintiff's instruction 13 is erroneous in that it submits the question as to future damages to the unguided guess of the jury. This is in the face of *Hawes v. Stock Yards,* 103 Mo. 60. (6) The court erroneously permitted each of the questions 1, 2 and 3 to be propounded to plaintiff, and each of the questions

4, 5 and 6 to be propounded to Elijah Brown, as they called an opinion on the very question that was to be tried by the jury. *Gavish v. Railroad*, 49 Mo. 274; *Eubank v. Edina*, 88 Mo. 650; *Gutridge v. Railroad*, 94 Mo. 468.

*Jones & Jones* and *Crittenden, Stiles & Gilkerson* for respondent.

(1) The giving of the additional instructions after the argument and submission did not prejudice the defendant nor constitute error. *Burns v. Wilson*, 1 Mo. App. 181; *Clusky v. St. Louis*, 50 Mo. 89; *Dowzelot v. Rawlings*, 58 Mo. 78; *McKeon v. Railroad*, 43 Mo. 405; *State v. Miller*, 100 Mo. 623; *Chinn v. Doris*, 21 Mo. App. 369. (2) Where the merits of the case appear to be decidedly in favor of the successful party the appellate court will be reluctant to reverse on mere technical objections to instructions. *Nicholson v. Golden*, 27 Mo. App. 159; *Barry v. Railroad*, 98 Mo. 73. (2) Plaintiff's instructions, numbered 1, 5 and 12, were correct. *Muehlhausen v. Railroad*, 91 Mo. 332. The words by "diligent inquiry," "reasonable care and diligence," "remotely" and "prudence and care" do not have to be explained. *Cottrill v. Krum*, 100 Mo. 397; *Johnson v. Railroad*, 96 Mo. 340; *Muehlhausen v. Railroad*, 91 Mo. 332. (3) Plaintiff's instruction, numbered 13, is not defective on the question of damages. *Sidekum v. Railroad*, 93 Mo. 406; *Waldhier v. Railroad*, 87 Mo. 48.

THOMAS, J.—Plaintiff, a minor, brought this action to recover damages for personal injuries alleged to have been sustained by him while a passenger on defendant's street railway car. He recovered judgment in the circuit court of Jackson county for $5,000 from which defendant appealed to this court.

I.   The first proposition we will discuss is in rela-
tion to plaintiff's right of recovery, upon the pleadings
and evidence.   This point has been expressly made at
the hearing before the court *in banc*, and, as it fairly
arises on the record of the trial, is entitled to be now
considered, though not raised earlier in this court.   In
order to dispose of this point intelligently, it becomes
necessary to give a summary of the pleadings and evi-
dence.   Plaintiff who prosecutes this action by next friend
bases his right to recover upon the ground that being
a passenger on a car of defendant's street railway in
Kansas City in September, 1885, he was thrown to the
ground, and under the wheels of said car and seriously
injured by reason of the negligence, carelessness and
recklessness of defendant's agent in driving said car at
an unusually high and dangerous rate of speed.

The answer contained a general denial, and a plea
of contributory negligence, on the part of the plaintiff.
*First.*   In taking and keeping an improper position on
the car; *second*, in attempting to get off of the car while
moving, and, *third*, in negligently conducting himself
while on the car.

Defendant did not interpose a demurrer to the evi-
dence at the close of plaintiff's case, but, at the close of
the evidence on both sides, it did ask the court to
instruct the jury to return a verdict for defendant,
which the court refused to do, thus presenting the point
under review.

Plaintiff's evidence tended to show that he was
twelve years of age at the time of the accident.   He
started down town about three o'clock P. M. with
another boy, about fourteen years old.   They boarded
one of the street cars of defendant's line, some two
blocks away from the point of the injury.   The car was
in charge of a driver who acted as conductor, when the
boys came aboard by way of the front platform.   Plain-
tiff's companion took a position on the platform proper,
the plaintiff himself remaining on the lower step, with

his back to the street, his right hand grasping the handrail attached to the body of the car, inside of which there was ample sitting room. The driver received the fare from the boys.

Louis Rollman testified that he was on the car just prior to the injury, and that the driver of the car went by the name of Big Jim. He says, "I got on the front end of the car. * * * Just after I jumped on, Jim collected the fare from some little boy standing on the front end of the car, and he said, 'Lou, I want your fare.' I said, 'Well, you go to the devil, Jim,' or something that way; in fun I meant it, for I was acquainted with him, I did not expect to pay any fare. * * * He said, 'You'll have some fun getting off,' and he commenced whipping up the mules into a lope." Rollman then went through the car to the rear and got off, thinking the car was going too fast to attempt getting off from the front end. Just as he got off, he saw the plaintiff lying on the ground. Other witnesses testified to the whipping of the mules by the driver, and to the high rate of speed at which the car was going, when it apparently ran over some obstruction on the railway track, causing it to jolt suddenly about the time plaintiff fell. Plaintiff says that the jolt and motion of the car loosened his hold upon the handrail; he fell, and the car passed over his knee causing the injury complained of.

On the part of the defendant, the evidence tended to show that the car was driven at the usual and moderate rate of speed, and that plaintiff, desiring to go to the rear end of the car with his companion, jumped off, and thus received his injuries. The driver of the car testified that Rollman was not on the car at the time of and immediately prior to the accident, and that no such conversation and conduct on his part occurred as testified to by Rollman.

Defendant's attorneys concede that, if it be held that the testimony of Rollman can be considered by the

court, there was evidence of negligence of the defendant to go the jury, but they devote much space to show that he is unworthy of credence.  As it is not tho province of this court to pass upon the credibility of this witness, nor upon the weight of his testimony, in passing upon a demurrer to the evidence, we will confine our discussion of the subject to the alleged contributory negligence of the plaintiff.

All the evidence showed that the plaintiff stood upon the step of the front platform of the car, whence he fell off and was injured.  Without attempting to review the adjudged cases and the works of the text-writers in regard to the rights of street-car platform passengers, and the duties and obligations of carriers to them, we will state succinctly the general principles applicable thereto, which we take it are fairly deducible therefrom, and which are in our judgment supported by reason.  *First.*  The plaintiff was a a passenger on defendant's car, and it was, therefore, defendant's duty to exercise the highest practical care to safely carry him during the trip.  *Furnish v. Railroad*, 102 Mo. 438.  *Second.*  It was plaintiff's duty on getting on board of the car to have placed himself in a safe position therein, there being at the time ample room inside, and having voluntarily taken position on the step of the platform, and remained there during transit, he must be held to have assumed all the risks of danger ordinarily incident to such position on such a conveyance.  But he did not assume the risk of danger created by the negligence of the carrier.  *Third.*  His taking and keeping a position on the step of the platform, though known to him to be not as safe as a seat inside the car, did not, however, sever his relation of passenger to the defendant as carrier, and while thus riding he had a right to exact of the carrier the highest practical care, not only in the appliances used, but also in the management of the conveyance.  In other words, by his assumption of this position, whether known to be dangerous or not, and hence his assumption of the

risks ordinarily incident to that position, he did not forfeit his right to exact the same care of the carrier that he would have been entitled to exact if he had taken the safest seat provided for him. The relation of passenger and carrier between plaintiff and defendant with all that that term imports continued to the time of the injury.

In support of these propositions we cite the following authorities : *Wagner v. Railroad*, 97 Mo. 512 ; *McGee v. Railroad*, 92 Mo. 208; *Muehlhausen v. Railroad*, 91 Mo. 344; *Burns v. Railroad*, 50 Mo. 139 ; *Huelsenkamp v. Railroad*, 34 Mo. 45; s. c., 37 Mo. 537; *Ashbrook v. Railroad*, 18 Mo. App. 290 ; *Gerstle v. Railroad*, 23 Mo. App. 361 ; *Smotherman v. Railroad*, 29 Mo. App. 265; *Tuley v. Railroad*, 41 Mo. App. 432 ; *Woolery v. Railroad*, 107 Ind. 381 ; *Railroad v. Busch*, 41 Am. & Eng. R. R. Cases, 89 ; *Dewire v. Railroad*, 37 Am. & Eng. R. R. Cases, 57 ; *Clark v. Railroad*, 36 N. Y. 137 ; *Fleck v. Railroad*, 134 Mass. 481; *Downey v. Hendrie*, 46 Mich. 498 ; *President v. Cason*, 20 Atl. Rep. (Md.) 113 ; Beach Con. Neg., p. 303, *et seq.*

In laying down these propositions we have ignored plaintiff's age and experience ; for while he alleges in his petition that he did not know that it was dangerous and unsafe to ride upon the platform of the car, when he came to testify, he said not a word about this. He was twelve years old, had ridden on street cars some, had some education and was a newsboy, and hence we may fairly assume that he knew it was safer in the car than on the platform, and, knowing this, the propositions announced by us will apply to him.

Applying these principles to the facts of this case, can we say that plaintiff was so clearly guilty of contributory negligence, he cannot recover? We think not. In disposing of this question, we must keep in mind that, as to passengers, the defendant corporation must be held to have been present in the person of the

conductor, and what the latter knew and did, the former knew and did. Plaintiff, according to his statement, got upon the step of the front platform of the car and remained there till he fell, or was thrown off. By taking that position voluntarily, he assumed all the risks of danger ordinarily incident to such a position. What were such risks? They were not as great as a position on a platform of a car propelled by steam power would be. "The reason for this is obvious. The highest speed of a horse car is comparatively very moderate and easily controlled. It can be stopped in a moment by means of the voice, reins and brake.    *    *    * It is a well-established principle that the mere fact of riding upon a street-car platform is not conclusive evidence of negligence. The courts have been uniform in promulgating this rule. The public have always regarded the platform as a safe place. Street-car companies also view it in the same light. They give the public to understand that it is a safe place, and habitually stop their cars for passengers and invite them to get on as long as there is standing room, either in the car, upon the platform, or upon the steps. Therefore, for a court to declare that the mere fact of riding upon the platform is such contributory negligence as will defeat an action in case of injury, would be to announce a rule without sound reason to support it." Art. by Eugene McQuillin, 20 C. L. J. 104.

But, as stated above, plaintiff did assume the ordinary risks of the position he took, and if the driver had exercised the highest practical care in the management of the car, and plaintiff had been thrown from it by a sudden movement ordinarily incident to such conveyance, he would have no remedy, for the very good reason that he would have to attribute his injury solely to his own voluntary conduct. It is not safe to stand on the car, either in or out of it. Starting or stopping necessarily tends to throw a person standing off his balance and cause him to fall. There is more or less

necessary swaying of a street car, both perpendicularly and latterly, and this motion is often increased by slight obstructions on the railway track, which cannot always be kept off in the busy street of a city where all varieties of vehicles are constantly moving across and along it. Hence, when plaintiff remained on the step of the platform, whether with or without the knowledge of the conductor, he assumed all the risks of being thrown from the car by its usual and ordinary movements, and if he was injured by such movements he is remediless. On the other hand, if he was thrown from the car by reason of its unusual and dangerous rate of speed at the time, resulting from the negligent conduct of the driver, he is entitled to recover damages for the injuries he received.

He did not assume the risk of danger created by the negligent misconduct of the driver, and, if that misconduct caused the injury, the corporation is liable. It is true if plaintiff had not been on the platform, we may fairly assume, he would not have been injured. But we hold the negligence of the driver in running the car at an unusual and dangerous rate of speed, if it caused plaintiff to lose his hold and fall from the car, was the proximate cause, and plaintiff's position on the platform only the condition, the remote cause of the injury. Whar. Neg., secs. 302, 303, 323 and 324; *Huelsenkamp v. Railroad*, 37 Mo. 537. If the driver, in this case, was guilty of the conduct attributed to him by Rollman, and some of the other witnesses, he was not only guilty of negligence, but wilful recklessness, in the management of the car, and we cannot sanction the doctrine that he had a right, by such conduct, to throw plaintiff from the car, simply because he had chosen to stand on the platform. Our conclusion on this point is that the court committed no error in refusing to nonsuit plaintiff.

II. This brings us to defendant's main contention, and that is, that the court erred in giving and refusing

instructions, and here we have found considerable diffi-
culty in determining what we ought to do.

The court gave thirty-three instructions in the first
instance, and then the thirty-fourth, after the jury had
been out two or three days, wrestling with the problems
of the case, without coming to an agreement. As much
of the defendant's argument is directed to instruc-
tion 34, we will present it in full. It is as follows:
" The petition of the plaintiff charges that the boy,
Samuel Willmott, while riding on the platform of one of
defendant's cars on Eighteenth street, in Kansas City,
Missouri, about ——, 1885, was jostled off or thrown
therefrom by reason of the person having charge of the
car at that time negligently and carelessly driving over
a small stone or obstruction upon the street-car track at
an unusually high and dangerous rate of speed, and by
reason thereof the boy was injured in the manner shown
by the evidence. Now, the answer of defendant denies
all this, and further says that whatever injuries the boy
may have received at that time, if any, were caused
by his own negligence in jumping from and off the car
while it was moving, and not because of any negligence
on the part of the defendant or the driver in charge of
the car. Now, if you believe from the evidence that the
boy was injured at the time and place and in the man-
ner charged in the petition, by the negligence of defend-
ant, as above stated, then you should find for the
plaintiff; but if you should find that the boy was injured
by his own carelessness, as charged in the defendant's
answer as above stated, then you should find for the
defendant. And in arriving at your verdict, whether it
be for the plaintiff or defendant, you have the right to
take into consideration all the facts and circumstances
of the case detailed in the evidence, to give such weight
as you may think proper to the testimony of the vari-
ous witnesses, and if any witness has wilfully testified
falsely to any material fact in the case, you have the
right to disregard the whole of his testimony."

Three specific objections are urged to this instruction : *First.* It is couched in such language and was given by the court on its own motion at a time and under circumstances calculated to impress the jury with an importance to which it was not entitled, thereby misleading the jury as to the effect to be given to the other instructions. *Second.* It ignored that phase of plaintiff's negligence asserted by defendant arising . from his position on the car, and, *third*, it did not submit the question of contributory negligence, but merely submitted the question whether plaintiff was injured by his negligence in jumping from the car.

As to the first objection above noted, plaintiff's attorneys insist that this instruction was not a revised epitome of the court's views of the law, but was intended to be considered by the jury with the other thirty-three instructions previously given, while defendant's contention is, that it had the effect to withdraw from the consideration of the jury the other instructions. We can very readily declare what the legal effect of the court's action was. This instruction, and the other thirty-three having been left with the jury, it was their duty to consider them together. Did they do this? We are unable to answer the question. Courts have the undoubted right, and it often becomes their duty, to give juries additional instructions after having retired for consultation ; but, when this is done, care should be taken to clearly define the scope and object of such additional instructions, so that the triers will be aided and not confused in the performance of their duty. The result we have reached renders it unnecessary, however, to elaborate this point further.

The second objection to the instruction under discussion is well taken. The defendant set up in its answer that plaintiff took an unsafe position on the platform, and its evidence tended to prove that the car was driven at a moderate and usual rate of speed, and

that plaintiff fell from it without negligence on defendant's part. This theory of the defense should have been presented by the court to the jury.

The third objection to this instruction is also well taken. It failed to present to the jury the issue of plaintiff's *contributory* negligence. The whole instruction was to the effect that, if plaintiff was injured by defendant's negligence, plaintiff ought to recover; but, if he was injured by his own negligence, the verdict ought to be for defendant. This does not present the issue fairly. The jury might have found that the party in charge of the car contributed to the injury by his reckless and negligent driving, and that plaintiff jumped off of the car to go to the rear end, and thus contributed to his own injury, and yet been justified, by the terms of the instruction, in returning the verdict they did. The instruction ought to be modified so as to declare that, if the defendant did not run the car at an unusual and dangerous rate of speed, plaintiff cannot recover, or if defendant ran the car at an unusual and dangerous rate of speed and thus directly contributed to the injury of the plaintiff, and that plaintiff stepped or jumped from the car while in motion and thus directly contributed to his injury, that is to say, if the injury was the result not of the negligence of the defendant alone, but of the joint negligence of both plaintiff and defendant, then plaintiff cannot recover.

If, therefore, the jury understood that they were to consider, and they did consider, the thirty-fourth instruction alone, the verdict ought not to be permitted to stand for the errors therein pointed out.

Let us see now, whether the verdict can be upheld upon the theory that the jury had regard to the thirty-four instructions as a whole, and in the absence of evidence to the contrary we must presume that the jury acted upon them all.

We have given these instructions a careful consideration, and we must confess that we have not been able

to reconcile them or to determine definitely what theories they present upon which the plaintiff could or could not recover. As has been seen, there were but two or three simple issues of fact presented by the evidence under the pleadings, and yet the court gave thirty-four instructions covering ten pages of printed matter. These issues could have been and ought to have been presented very simply and pointedly.

The instructions are faulty in two particulars. They are conflicting in the first place, and in the second place they lay down principles not sound in law. It would be a profitless task to undertake to point out the conflicts in the instructions, or wherein they are erroneous. Taken as a whole we feel justified in saying that they must have failed to instruct the jury.; that they must have confused them and left them to grope in the dark as to the rights of plaintiff, and the duties and obligations of the defendant. If, taking the instructions altogether, we could say that the jury, in order to return the verdict they did, must have found that the plaintiff was thrown from the car and injured because the car was driven carelessly and negligently, at an unusual and dangerous rate of speed, and that the plaintiff did not contribute to his injury by jumping or stepping from the car while in motion, we would affirm the judgment, but we are unable to do this. So many theories, some correct, some erroneous, were given to the jury, upon which they were authorized to act, that it is impossible for us to determine what theory was adopted as the basis of the verdict, and it follows that the judgment must be reversed.

In conclusion we will say, that, if instruction 34 be taken as a basis, all the theories of the parties necessary to be presented to the jury can be easily framed. That instruction very clearly defines the theory upon which plaintiff can recover, but it fails to define the theories which would have authorized a verdict for defendant. These theories are, *first*, that the car was

driven at an ordinary and safe rate of speed, and, if plaintiff did not step or jump off voluntarily, his fall from the car was the result of accident occasioned by the ordinary dangers incident to the position occupied by him, or from his voluntarily stepping from the car, and, *second*, that, even if the car was driven at an unusual and dangerous rate of speed, which contributed to the injury, yet plaintiff voluntarily stepped or jumped from the car while in motion, thus contributing to his own injury. By hypothetically presenting these two theories in addition to the one presented by the instruction on behalf of plaintiff, the whole ground will be covered as to the issues of negligence and contributory negligence.

III. On the question of the measure of damages, it seems to us the attorneys on the next trial ought to be able to frame an instruction that would conform to the former adjudications of this court and be above criticism. Of course we do not mean to confine the trial court below in the trial of the case to the theories above indicated, if the issues should be changed by the pleadings and the evidence. The views herein expressed apply only to the record as it is represented to us.

The judgment is reversed and the cause remanded for new trial. All concur. BARCLAY, J., concurs (as to the new point urged *in banc*) in the conclusion that the facts made a case for the jury; on the other questions involved he concurs for the reasons stated in the original opinion in division number 1 (16 S. W. Rep. 500).